# EXHIBIT A

Case# 2020-03171-2 Received at Cumberland County Prothonotary on 10/21/2020 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

PENNSYLVANIA-AMERICAN WATER COMPANY

Plaintiff

THE 3M COMPANY (F/K/A MINNESOTA MINING AND MANUFACTURING, CO.), ET AL.

Defendant

:  IN THE COURT OF COMMON PLEAS OF
:  CUMBERLAND COUNTY, PENNSYLVANIA
:
:
:  NO. 03171                    20 20
:
:  Civil Term
:

## NOTICE TO DEFEND

YOU HAVE BEEN SUED IN COURT. IF YOU WISH TO DEFEND AGAINST THE CLAIMS SET FORTH IN THE FOLLOWING PAGES, YOU MUST TAKE ACTION WITHIN TWENTY (20) DAYS AFTER THIS COMPLAINT AND NOTICE ARE SERVED, BY ENTERING A WRITTEN APPEARANCE PERSONALLY OR BY AN ATTORNEY AND FILLING IN WRITING WITH THE COURT YOUR DEFENSES OR OBJECTIONS TO THE CLAIMS SET FORTH AGAINST YOU. YOU ARE WARNED THAT IF YOU FAIL TO DO SO THE CASE MAY PROCEED WITHOUT YOU AND A JUDGEMENT MAY BE ENTERED AGAINST YOU BY THE COURT WITHOUT FURTHER NOTICE FOR ANY MONEY CLAIMED IN THE COMPLAINT OR FOR ANY OTHER CLAIM OR RELIEF REQUESTED BY THE PLAINTIFF. YOU MAY LOSE MONEY OR PEOPERTY OR OTHER RIGHTS IMPORTANT TO YOU.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO THE TELEPHONE OR THE OFFICE SET FORTH BELOW TO FIND WHERE YOU CAN GET LEGAL HELP.

**CUMBERLAND COUNTY BAR ASSOCIATION**
**32 SOUTH BEDFORD STREET**
**CARLISLE, PA 17013**
**1-800-990-9108**
**717-249-3166**

Case# 2020-03171-2 Received at Cumberland County Prothonotary on 10/21/2020 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**IN THE COURT OF COMMON PLEAS FOR CUMBERLAND COUNTY, PENNSYLVANIA**

**CIVIL DIVISION**

| | |
|---|---|
| **PENNSYLVANIA-AMERICAN WATER COMPANY,**<br><br>    **Plaintiff,**<br><br>    **v.**<br><br>**THE 3M COMPANY (f/k/a Minnesota Mining and Manufacturing, Co.); E.I. DUPONT DE NEMOURS AND COMPANY; DUPONT DE NEMOURS, INC. (F/K/A DOWDUPONT, INC.); CORTEVA, INC.; THE CHEMOURS COMPANY; THE CHEMOURS COMPANY FC, LLC; DYNEON LLC; KIDDE-FENWAL, INC.; ANGUS FIRE; THE ANSUL COMPANY; TYCO FIRE PRODUCTS LP; CHEMGUARD, INC.; NATIONAL FOAM, INC.; BUCKEYE FIRE EQUIPMENT COMPANY; BUCKEYE FIRE PROTECTION COMPANY; RAYTHEON TECHNOLOGIES CORPORATION; KIDDE PLC INC.; KIDDE FIRE FIGHTING, INC.; CARRIER GLOBAL CORPORATION; ANGUS FIRE ARMOUR CORPORATION; CHUBB FIRE, LTD.; UNITED TECHNOLOGIES CORPORATION; CIBA, INC.; DYNAX CORP.; CLARIANT CORP.; ARCHROMA MANAGEMENT LLC; ARKEMA INC.; CHEMDESIGN PRODUCTS, INC.; AMEREX CORPORATION; AGC CHEMICALS AMERICAS INC.; CHEMICALS INC.; DEEPWATER** | **Case No. 2020-03171    Civil Term**<br><br>**Civil Action_____**<br><br>**COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

1

Case# 2020-03171-2 Received at Cumberland County Prothonotary on 10/21/2020 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**CHEMICALS, INC.; NATION FORD CHEMICAL COMPANY; AAA EMERGENCY SUPPLY CO., INC.; WILLIAMS FIRE & HAZARD CONTROL, INC.; E-ONE, INC. (f/k/a Emergency One, Inc.);  JOHN DOE DEFENDANTS 1-50,**

            **Defendants.**

Pennsylvania-American Water Company ("PAWC" or "Plaintiff") files this Complaint against the Defendants named herein and in support thereof alleges as follows:

## SUMMARY OF THE CASE

1.      PAWC brings this action for damages, contribution, abatement, and/or reimbursement of costs incurred, and which continue to be incurred, to address and remediate the presence of "forever chemicals" in its water supplies, namely the unwanted presence of Polyfluoroalkyl substances or "PFAS" chemicals. These unwanted contaminants include but are not limited to Perfluorooctanoic acid ("PFOA"), Perfluorooctanesulfonic acid ("PFOS"), Perfluorohexanoic acid ("PFHxA"), Perfluoropentanoic acid ("PFPA"), Perfluoroheptanoic acid ("PFHpA"), Pentafluorobenzoic acid ("PFBA"), Perfluorobutanesulfonic acid ("PFBS"), Perfluorononanoic acid ("PFNA"), Perfluorodecacanoic acid ("PFDA"), and Perfluorohexane Sulfonic Acid ("PFHS"), as well as any and all hazardous chemicals produced by Defendants (collectively referred to herein as "PFAS"), found in the public water supply systems owned and operated by PAWC throughout the Commonwealth of Pennsylvania and in the ground and surface waters that serve as supply sources for those systems.

2

Case# 2020-03171-2 Received at Cumberland County Prothonotary on 10/21/2020 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

2.      As the manufacturers and sellers of products that contain PFAS compounds, Defendants The 3M Company (f/k/a Minnesota Mining and Manufacturing Co.), E.I. DuPont de Nemours and Company, DuPont de Nemours, Inc. (f/k/a DowDuPont), Corteva, Inc., The Chemours Company, The Chemours Company FC, LLC, Dyneon LLC, Kidde-Fenwal, Inc., Angus Fire, The Ansul Company, Buckeye Fire Equipment Company, Chemguard, Inc., National Foam, Inc., Tyco Fire Products, LP, and John Doe Defendants 1-50 (collectively "Defendants"), have discharged PFAS into, or are otherwise responsible for PFAS released into, the groundwater and surface waters that serve as the supply sources for PAWC's public water supply systems.

3.      For many years Defendants manufactured, sold, and distributed PFAS compounds and products containing PFAS chemicals.  These products include the firefighting suppressant agent, Aqueous Film Forming Foam ("AFFF") that contains those compounds, for use at airports, fire-fighting training centers, fire-fighting locations, and military facilities throughout the Commonwealth of Pennsylvania that are located near water facilities owned and/or operated by PAWC.

4.      Defendants knew, or should have known, that PFAS and related constituents present unreasonable risks and dangers to human health, water quality, and the environment.  Yet, Defendants distributed, handled, discharged, and were otherwise responsible for the release of PFAS into the environment without sufficient containment or caution.  Defendants' acts and omissions resulted in the presence of these compounds in the water sources of PAWC's public supply systems.  As a result of the occurrence of PFAS in the environment from Defendants' discharges, Defendants have created a nuisance such that PAWC has been and will be required to fund and implement capital improvements, and has and will in the future incur ongoing testing,

Case# 2020-03171-2 Received at Cumberland County Prothonotary on 10/21/2020 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

operation, and maintenance costs, in order to identify, remove, and treat for the presence of PFAS in its public water supply systems, and has and will incur damages.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction.

6.      Venue is proper in this Court because a substantial part of the events giving rise to this Complaint occurred in Cumberland County, Pennsylvania.

## PLAINTIFF

7.      Plaintiff PAWC is a Pennsylvania corporation with its principal place of business in Mechanicsburg, Pennsylvania.   PAWC provides drinking water and related services to an estimated 2.4 million Pennsylvanians.

8.      PAWC owns and operates 67 public water supply systems in the Commonwealth of Pennsylvania.

9.      PAWC relies on groundwater aquifers and surface waters to supply water for its public water systems. PAWC's water systems include over 100 active groundwater wells.

## DEFENDANTS

10.      Defendant The 3M Company (f/k/a Minnesota Mining and Manufacturing Company) ("3M") is a Delaware corporation, with its principal place of business located at 3M Center, St. Paul, Minnesota 55133.

11.      Through at least 2002, 3M manufactured PFOS for use in AFFF and other products, and it manufactured AFFF that contained PFAS compounds.

12.      Defendant Dyneon LLC ("Dyneon") is a subsidiary of 3M and is a Delaware corporation with its principal place of business in Oakdale, Minnesota.  Dyneon does business throughout the United States, including in Pennsylvania, and in various other countries.  At all

4

Case# 2020-03171-2 Received at Cumberland County Prothonotary on 10/21/2020 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

relevant times, Dyneon manufactured, marketed, promoted, distributed, and/or sold AFFF containing PFOA and/or PFOS used to fight fires at various military bases, airports, and other locations throughout the United States.

13.     Defendant E.I. DuPont de Nemours and Company ("DuPont") is a Delaware corporation with its principal place of business in Wilmington, Delaware. DuPont does business throughout the United States, including in Pennsylvania. DuPont manufactured, marketed, promoted, distributed, and/or sold products containing PFOA and/or PFOS or which degraded into PFOA and/or PFOS, that were used, inter alia, in AFFF. Specifically, DuPont was a founding member of the Fire Fighting Foam Coalition and through its active participation in this Coalition, DuPont marketed and sold its fluorosurfactants containing PFAS to AFFF manufacturers.

14.     Defendants The Chemours Company and The Chemours Company FC, LLC are Delaware corporations with their principal places of business in Wilmington, Delaware. These Defendants are collectively referred to as "Chemours" or "the Chemours Defendants" and do business throughout the United States, including in Pennsylvania. In 2015, DuPont spun off its "performance chemicals" business, including its fluoroproduct divisions and business, to Chemours. The fluoroproducts and chemical solutions businesses appear to have been transferred to both The Chemours Company and the Chemours Company FC, LLC. The Chemours Company was incorporated as a subsidiary of DuPont until approximately April of 2015, and The Chemours Company FC, LLC was formed as a subsidiary around the same time. In approximately July of 2015, Chemours assumed the operations, assets, and certain limited liabilities of DuPont's performance chemical business and began operating as an independent company. As part of this spinoff Chemours assumed certain environmental liabilities associated with DuPont's historical

business lines, including those related to PFOA/PFOS. DuPont and Chemours, as alleged in detail below, fraudulently conveyed the assets and liabilities of DuPont in this spin-off. Chemours has filed a complaint against DuPont in the Delaware Chancery Court seeking declaratory relief related to the allocation of various environmental liabilities.

15.    Defendant Corteva, Inc. ("Corteva") is a Delaware corporation with its principal place of business in Wilmington, Delaware. Corteva does business throughout the United States, including in Pennsylvania. Corteva was formed through a series of transactions initiated by the merger of DuPont and the Dow Chemical Company ("Dow") in August of 2017, which formed DowDuPont, Inc ("DowDuPont"). DuPont and Dow each became subsidiaries of DowDuPont. Corteva was formed as a subsidiary of DowDuPont in 2018, and in approximately June 2019, DowDuPont spun off its agricultural business to Corteva. Corteva is the parent of DuPont, holds all of DuPont's outstanding stock, and holds some of DowDuPont's assets and liabilities, including its agricultural and nutritional businesses, which in turn likely include business lines and liabilities relating to PFAS manufacture, marketing, distribution, and/or sale.

16.    Defendant DuPont de Nemours, Inc. (f/k/a DowDuPont) ("New DuPont") is a Delaware corporation with its principal place of business in Wilmington, Delaware. New DuPont does business in the United States, including in Pennsylvania. DowDuPont became New DuPont following the Corteva spin-off. New DuPont holds assets in the specialty products businesses, and the remainder of the financial assets and liabilities that DuPont held after the aforementioned spin-offs. Presumably, these assets and liabilities are valued at billions of dollars and are related to DuPont's historic PFAS manufacture, marketing, distribution, and/or sale.

Case# 2020-03171-2 Received at Cumberland County Prothonotary on 10/21/2020 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

17.     Defendants DuPont, New DuPont, the Chemours Defendants, and Corteva are collectively referred to herein as the "DuPont Defendants." The allegations, counts, and causes of action in this Complaint as against the DuPont Defendants are solely and exclusively for the DuPont Defendants' conduct, acts, and omissions regarding the manufacture, marketing, sales, and distribution of compounds, chemicals, and products, components and otherwise, of AFFF.

18.     Defendant Angus Fire ("Angus") is part of Angus International, and has corporate headquarters in Bentham, United Kingdom.  Angus Fire maintains a place of business in the United States at 141 Junny Road, Angier, North Carolina 27501.  At all times relevant, Angus manufactured fire suppression products, including AFFF that contained PFAS compounds.

19.     Defendant The Ansul Company (hereinafter "Ansul") is a Wisconsin corporation, with its principal place of business at One Stanton Street, Marinette, Wisconsin 54143.  At all times relevant, Ansul manufactured fire suppression products, including AFFF that contained PFAS compounds.

20.     Defendant Chemguard, Inc. is a foreign corporation, having a principal place of business at One Stanton Street, Marinette, Wisconsin 54143.  At all times relevant, Chemguard manufactured fire suppression products, including AFFF that contained PFAS compounds.

21.     Defendant Tyco Fire Products, L.P. is a foreign corporation, having a principal place of business at One Stanton Street, Marinette, Wisconsin 54143.  At all times relevant, Tyco manufactured fire suppression products, including AFFF that contained PFAS compounds.

22.     Defendants Buckeye Fire Equipment Company and Buckeye Fire Protection Company (collectively "Buckeye") are North Carolina corporations, with their principal place of business at 110 Kings Road, Kings Mountain, North Carolina 28086. At all times relevant,

Case# 2020-03171-2 Received at Cumberland County Prothonotary on 10/21/2020 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2020-03171-2 Received at Cumberland County Prothonotary on 10/21/2020 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Buckeye manufactured fire suppression products, including AFFF that contained PFAS compounds.

23.    Defendant National Foam, Inc. (a/k/a Chubb National Foam) (National Foam, Inc. and Chubb National Foam are collectively referred to as "National Foam") is a Pennsylvania corporation, with its principal place of business at 350 East Union Street, West Chester, Pennsylvania 19382.  At all times relevant, National Foam manufactured fire suppression products, including AFFF that contained PFAS compounds.

24.    Defendant Kidde-Fenwal, Inc. ("Kidde") is a Delaware corporation with its principal place of business in Ashland, Massachusetts. Kidde is the successor-in-interest to Kidde Fire Fighting, Inc. (f/k/a Chubb National Foam, Inc. f/k/a National Foam System, Inc.). Kidde does business throughout the United States, including conducting business in Pennsylvania. Kidde manufactured, marketed, promoted, distributed, and/or sold AFFF that contained PFOA, PFOS, and other toxic substances.

25.    Defendant United Technologies Corporation ("United Technologies") is a Delaware corporation authorized to do business in New York, with principal offices at 10 Farm Springs Road, Farmington, CT 06032.

26.    Defendant Raytheon Technologies Corporation ("Raytheon") is a Delaware corporation, with principal offices at Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.    Upon information and belief, Raytheon is successor-in-interest to United Technologies.

27.    Defendant Kidde PLC Inc. ("Kidde") is a Delaware corporation authorized to do business in New York, with principal offices at One Carrier Place, Farmington, CT 06034. Upon information and belief, Kidde, was formerly known as Williams Holdings, Inc. and/or Williams US, Inc.

28.    Defendant Kidde Fire Fighting, Inc. ("Kidde Fire Fighting") is a Pennsylvania corporation with principal offices at 400 Main Street, Ashland, MA 01721. Upon information and belief, Kidde Fire Fighting, was formerly known as National Foam, Inc., National Foam System, Inc., and/or Chubb National Foam, Inc.

29.    Defendant Carrier Global Corporation ("Carrier") is a Delaware corporation, with principal offices at 13995 Pasteur Boulevard, Palm Beach Gardens, FL 33418. Upon information and belief, Carrier was formed in March 2020 when United Technologies Corporation spun off its fire and security business. Upon information and belief, Carrier is the parent corporation of Kidde-Fenwal.

30.    Defendant Angus Fire Armour Corporation ("Angus Fire") is a Delaware corporation, with principal offices at 141 Junny Road, Angier, NC 27501.

31.    Defendant Chubb Fire, Ltd. ("Chubb") is a foreign private limited company, with offices at Littleton Road, Ashford, Middlesex, United Kingdom TW15 1TZ. Upon information and belief, Chubb is registered in the United Kingdom with a registered number of 134210. Upon information and belief, Chubb is or has been composed of different subsidiaries and/or divisions, including but not limited to, Chubb Fire & Security Ltd., Chubb Security, PLC, Red Hawk Fire & Security, LLC and/or Chubb National Foam, Inc.

Case# 2020-03171-2 Received at Cumberland County Prothonotary on 10/21/2020 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2020-03171-2 Received at Cumberland County Prothonotary on 10/21/2020 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

32.     Defendant Ciba, Inc. (f/k/a Ciba Specialty Chemicals Corporation) ("Ciba") is a Delaware corporation, with principal offices at Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

33.     Defendant Dynax Corp. ("Dynax") is a Delaware corporation, with principal offices at 103 Fairview Park Drive, Elmsford, NY 10523.

34.     Defendant Clariant Corp. ("Clariant") is a New York corporation, with principal offices at 4000 Monroe Road, Charlotte, NC 28205.

35.     Defendant Archroma Management LLC ("Archroma") is a foreign corporation organized and existing under the laws of Switzerland, with principal offices at Neuhofstrasse 11, 4153 Reinach, Basel-Land, Switzerland.

36.     Defendant Arkema Inc. ("Arkema") is a Pennsylvania corporation, with principal offices at 900 1st Avenue, King of Prussia, PA, 19406.

37.     Defendant ChemDesign Products, Inc. ("ChemDesign") is a Delaware corporation, with principal offices at 2 Stanton Street, Marinette, WI 54143.

38.     Defendant Amerex Corporation ("Amerex") is an Alabama corporation with its principal place of business located at 7595 Gadsden Highway, Trussville, AL 35173.

39.     Defendant AGC Chemicals Americas Inc. ("AGC") is a Delaware corporation, with principal offices at 55 E Uwchlan Ave, Suite 201, Exton, PA 19341.

40.     Defendant Chemicals Inc. is a Texas corporation, with principal offices at 12321 Hatcherville Road, Baytown, TX 77521.

41.    Defendant Deepwater Chemicals, Inc. ("Deepwater") is a Delaware corporation, with principal offices at 196122 E County Road 40, Woodward, OK 73801. Defendant Nation Ford Chemical Company ("Nation Ford") is a South Carolina corporation, with principal offices at 2300 Banks Street, Fort Mill, SC 29715.

42.    Upon information and belief, Defendants Chemicals, Inc., Deepwater, and Nation Ford designed, manufactured, marketed, distributed, and sold fluorosurfactant products containing PFAS for use in the manufacture of AFFF products.

43.    Defendant AAA Emergency Supply Co., Inc. ("AAA Emergency Supply") is a New York corporation, with principal offices at 635-637 White Plains, NY 10603.

44.    Defendant Williams Fire & Hazard Control, Inc. ("Williams") is a Texas corporation, with principal offices at 9605 Richard Wycoff Drive, Port Arthur, TX 77640.

45.    Defendant E-One, Inc. (f/k/a Emergency One, Inc.) ("E-One") is a Delaware corporation, with principal offices at 1601 SW 37th Avenue, Ocala, FL 34474.

46.    Upon information and belief, Defendants John Does 1-50 also manufactured and sold products that contain PFAS compounds.  Plaintiff PAWC presently lacks information sufficient to specifically identify the names of Defendants sued herein under the fictitious names DOES 1 through 50.  PAWC will amend this Complaint to show their true names if and when they are ascertained.

## POLYFLUOROALKYL SUBSTANCES

47.    PFAS compounds are a family of manmade chemicals, also known as perfluorochemicals ("PFCs"), that have been used for decades to make products that resist heat, oil, stains, grease and water.

11

Case# 2020-03171-2 Received at Cumberland County Prothonotary on 10/21/2020 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2020-03171-2 Received at Cumberland County Prothonotary on 10/21/2020 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

48.    In the 1940s and 1950s, 3M began creating PFAS chemicals and incorporating them into their products after recognizing their surfactant properties.  Over the years, PFAS chemicals were sold to other companies for use in AFFF and a variety of other products, including stain resistant carpeting and upholstery, clothing, paper packaging for food, water and grease resistant cookware.

49.    AFFF was introduced commercially in the mid-1960s and rapidly became the primary fire-fighting foam in the United States and other parts of the world. AFFF is a Class-B firefighting foam, which is water-based and used to extinguish fires that are difficult to fight, particularly those that involve petroleum or other flammable liquids.

50.    AFFF's are synthetically formed by combining fluorine free hydrocarbon foaming agents with highly fluorinated surfactants. When mixed with water, the resulting solution has the characteristics needed to produce an aqueous film that spreads across the surface of a hydrocarbon fuel. It is this film formation feature that provides fire extinguishment and is the source of the designation, aqueous film forming foam.

51.    PFASs are extremely persistent in the environment and resistant to typical environmental degradation processes. In addition, they are thermally stable synthetic organic contaminants, are likely carcinogenic, and have been shown to correlate with thyroid disease and immune deficiencies. PFASs also have high water solubility (mobility) and low biodegradation (persistence).

12

Case# 2020-03171-2 Received at Cumberland County Prothonotary on 10/21/2020 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

52.    PFASs, in particular PFOS and PFOA, have been identified as "emerging contaminants" by the United States Environmental Protection Agency ("EPA").  This term describes contaminants about which the scientific community, regulatory agencies and the general public have a new and increasing awareness or understanding about how they move in the environment or affect public health.

53.    PFASs, like other emerging contaminants, have become the focus of active research and study, which means that new information is released periodically regarding the effects on the environment and human health as a result of exposure to these chemicals.

54.    Certain PFAS compounds, such as PFOS and PFOA (which is also known as "C8" because it contains eight carbon compounds), have been the focus of many state and EPA investigations.

55.    EPA studies have indicated that exposure to PFOA and PFOS over certain levels can result in adverse health effects, including but not limited to developmental effects to fetuses during pregnancy or to breastfed infants (e.g., low birth weight, accelerated puberty, skeletal variations), cancer (e.g., testicular, kidney), liver effects (e.g., tissue damage), immune effects (e.g., antibody production and immunity), thyroid effects and other effects (e.g., cholesterol changes).

56.    In January of 2009, the EPA established a drinking water Provisional Health Advisory Level ("HAL") for PFOA and PFOS, the two PFAS compounds about which it had the most toxicological data. EPA set the Provisional HAL at 0.4 parts per billion (ppb) for PFOA and 0.2 ppb for PFOS.

57.    In May 2016, EPA issued new HALs for PFOA and PFOS, identifying 0.07 ppb (or 70 parts per trillion (ppt)) as the concentration of PFOA or PFOS in drinking water at or below

Case# 2020-03171-2 Received at Cumberland County Prothonotary on 10/21/2020 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

which research at the time indicated health effects would likely not occur over a lifetime of exposure.

58.     In connection with its emerging contaminant studies, EPA implemented an Unregulated Contaminant Monitoring Rule Number 3 in 2012 ("UCMR 3"), which was designed to collect nationwide information regarding the occurrence of PFAS contamination in the public's water supply.

59.     UCMR 3 required sampling of Public Water Systems ("PWSs") serving more than 10,000 people (i.e., large systems) and 800 representative PWSs serving 10,000 or fewer people (i.e., small systems) for 21 chemicals, including a number of PFASs, during one consecutive twelve month period in the timeframe between 2013 through 2015.

60.     Sampling under UCMR 3 used higher reporting limits than would be applicable in light of scientific information and guidance levels developed since that time, which are much lower than those employed in 2008 and 2009.

61.     In addition, the UCMR 3 sampling effort did not combine PFAS levels thus did not take into account added effects from the presence of more than one PFAS compound.

62.     While more studies have been conducted, and thus, more is known regarding PFOS and PFOA, all PFAS compounds have generally demonstrated similar characteristics to PFOS and PFOA.

63.     Although some PFAS compounds have been shown to break down, the resulting products typically end at non-biodegradable PFOA and PFOS.

64.     The EPA acknowledges that the studies associated with PFAS compounds are ongoing, and as such, the HALs may be adjusted based upon new information.

Case# 2020-03171-2 Received at Cumberland County Prothonotary on 10/21/2020 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

65.     As manufacturers, sellers, handlers and dischargers of PFAS compounds, and products containing PFAS, Defendants knew or should have known that the inclusion of PFAS chemicals in any products presented an unreasonable risk to human health and the environment.

66.     Defendants knew or should have known that PFAS compounds are highly soluble in water, highly mobile, extremely persistent, and highly likely to contaminate water supplies if released to the environment.

67.     Defendants' prior knowledge of the adverse impacts from PFAS compounds to human health and the environment amounts to reckless disregard to human health and environmental safety.  Nonetheless, Defendants negligently and recklessly manufactured and sold PFAS and products containing PFAS with no warnings or instructions on use or disposal to avoid contamination.

68.     Defendants' actions have directly resulted in contamination of a portion of the wells and surface water sources that make up PAWC's water supply system.  Because Defendants' PFAS has infiltrated the waters that serve as the source for PAWC's public water supply system, contamination of PAWC's wells and surface water sources is recurring and continuing.

## ILLEGAL TRANSFERS BETWEEN THE DUPONT DEFENDANTS

69.     In approximately 2014, DuPont formed Chemours as a wholly owned subsidiary. At that time, Chemours apparently had a board of directors, but that board was controlled by DuPont.

70.     In July of 2015, DuPont transferred its "performance chemicals" business to The Chemours Company. Around the same time, The Chemours Company FC, LLC was formed as a subsidiary of The Chemours Company. The transfer of the "performance chemicals" business

Case# 2020-03171-2 Received at Cumberland County Prothonotary on 10/21/2020 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

included at least titanium technologies, fluoroproducts, and chemical solutions. The fluoroproducts and chemical solutions transfers appear to have been made to The Chemours Company and the Chemours Company FC, LLC (again, collectively "Chemours").

71.     In addition to the transfer of these business lines, Chemours assumed various liabilities for DuPont's prior use, manufacture, and discharge of PFAS, although the specific details regarding the liabilities that Chemours took on are not publicly available.[1]

72.     The DuPont-Chemours transfer included incredible amounts of debt and multiple failing product lines. Significantly, DuPont pinned on Chemours its historic (and future) environmental liabilities, which were known by DuPont to be massive. Chemours did not receive a reasonably equivalent value in exchange for this transfer or obligation. Likewise, the assets transferred to Chemours were unreasonably small in relation to the business or transaction. DuPont knew or reasonably should have known that Chemours would incur debts beyond its ability to pay them when they became due.

73.     At the time of the DuPont-Chemours transfer, the DuPont performance chemicals business held an estimated debt of approximately $4 billion.

74.     At that same time, DuPont announced that it planned to phase out production and use of PFOA, a major component of its fluoroproducts line, by 2015.

75.     Per the Separation Agreement governing the DuPont-Chemours transfer, Chemours agreed to indemnify DuPont against, and assumed for itself, all of DuPont's liabilities from DuPont's performance chemicals business, with no time limitation. This indemnification remains

---

[1] For instance, various of The Chemours Company's and Dupont's public filings indicate that both The Chemours Company and the Chemours Company FC, LLC were transferred assets that include fluoroproducts and chemical solutions business lines.

Case# 2020-03171-2 Received at Cumberland County Prothonotary on 10/21/2020 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

uncapped. Chemours also agreed to indemnify DuPont against and assume for itself the performance chemical liabilities without regard to the nature of the liabilities, when they were incurred or arose, or which entity is named as the responsible party. Chemours further agreed to indemnify DuPont from, and assume all, environmental liabilities that arose prior to the spinoff if they were "primarily associated" with the performance chemicals business, which would be based on a determination made by DuPont that the liability was 50.1% attributable to DuPont's performance chemicals operations.

76.     Chemours also agreed to substitute itself for DuPont with regard to any order, decree, judgment, agreement or action relating to the environmental liabilities it assumed.

77.     At the time of the DuPont-Chemours spin-off in 2015, DuPont was fully aware of its potential liabilities related to PFAS contamination throughout the United States.

78.     Until the completion of the spinoff, Chemours was a wholly-owned subsidiary of DuPont, and even though Chemours had a separate board of directors, the board was controlled by DuPont. After the spin-off, new members of the Chemours board were appointed. The spin-off and related decisions were conducted while DuPont controlled the board. The new Chemours board did not take part in the separation.

79.     DuPont's knowledge and assessment of its liabilities—including environmental and other performance chemicals liabilities—have been comprehensive since it began its performance chemical operations, and its litigation-related liabilities have been increasing since at least the early 2000's. For example, in 2005, DuPont agreed to pay $16.5 million to resolve claims brought by the EPA for violations of the Toxic Substances Control Act and the Resource Conservation and Recovery Act related to its PFAS compounds. Although seemingly small, this was the largest such PFC-related penalty in history at the time it was levied.

Case# 2020-03171-2 Received at Cumberland County Prothonotary on 10/21/2020 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

80.    Relatedly and also in 2005, DuPont incurred hundreds of millions of dollars of liability related to litigation against it for the health risks of its PFOA use and disposal in Ohio and West Virginia, which had caused thousands of people to receive serious medical diagnoses, including cancer, attributable to DuPont's PFCs.

81.    In 2016, Chemours itself acknowledged in an SEC filing that the anticipated outcomes in the Ohio litigation could materially and adversely affect Chemours' financial positions in terms of its operations and liquidity.

82.    Subsequently, DuPont and Chemours agreed to pay $671 million to resolve the Ohio claims. Chemours and DuPont each additionally agreed to pay $25 million annually for future PFOA-related costs not covered by the settlement for the following five years.

83.    At the time of the DuPont-Chemours spin-off, DuPont had been sued, had been on notice of impending suits, and/or actually knew of likely litigation and its liability for damages and injuries from the manufacture of PFAS and products that contain PFAS. Chemours' assumptions of liability were not limited to PFAS-related conduct; it also assumed various environmental liabilities related to prior, pending, and future litigation regarding other performance chemicals, such as benzene.

84.    The intent and effect of creating Chemours was to allocate an enormous portion of DuPont's environmental liabilities, including liabilities related to its PFAS chemicals and products. DuPont and Chemours effectuated this spin-off with the knowledge that Chemours would be insolvent and would not be able to bear the liabilities that DuPont transferred to Chemours. DuPont and/or Chemours engaged in this process with the actual intent to deceive. This fraudulent conveyance has likely limited the availability of funds to cover DuPont's liability, including for the claims that arise out of this case, which has and will further harm Plaintiff.

18

Case# 2020-03171-2 Received at Cumberland County Prothonotary on 10/21/2020 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## PAWC WATER SYSTEM IMPROVEMENTS

85.    PAWC is committed to the supply of safe, reliable, and affordable drinking water. PAWC must therefore implement remedies to assure that the water it supplies to its customers meets these standards.

86.    As a direct result of Defendants' action, PAWC has had to address PFAS contamination. In doing so, PAWC has conducted and continues to conduct sampling, studies, and investigations related to PFAS, which requires funding by PAWC, including costs for its personnel to supervise the assessments, and costs to develop PFAS treatment scenarios, costs to analyze the samples that are collected and costs to analyze available alternatives.

87.    PAWC has incurred, and will continue to incur, significant costs, for capital improvements such as the installation of Granular Activated Carbon ("GAC") to reduce and/or remove PFAS contamination, and other operational adjustments to help assure sufficient non-PFAS impacted water supplies. Operation and maintenance measures for these improvements are ongoing and add further to the costs that PAWC has incurred and will incur in the future to address Defendants' PFAS contamination.

## COUNT ONE – STRICT LIABILITY

88.    Plaintiff PAWC hereby incorporates by reference the allegations set forth in the foregoing paragraphs of this Complaint as if they were set forth fully herein.

89.    Defendants engaged in the design, manufacturing, marketing, and sales of PFAS chemicals and products containing PFAS, which Defendants knew or should have known, would result in contamination of the environment, including the surface waters and groundwater that serve as the water source for Plaintiff's public water supply systems, thereby causing damage to Plaintiff.

19

90.    Defendants knew or should have known of the adverse impacts the exposure to its PFAS compounds would have on the environment and the activities and rights of others.

91.    Defendants knew or should have known of the persistence and high mobility of PFAS in the environment, and the foreseeable risk that their PFAS and PFAS-containing products would be discharged, released, or disposed of in the environment.

92.    By causing PFAS contamination and the resulting impact to Plaintiff's public water supply systems, Defendants engaged in abnormally dangerous activity for which they are strictly liable.

93.    As a result of Defendants' abnormally dangerous activity, plaintiff has incurred, and will continue to incur, investigation, cleanup, remediation, and removal costs and damages related to PFAS contamination.

## COUNT TWO – STRICT LIABILITY (FAILURE TO WARN)

94.    Plaintiff PAWC hereby incorporates by reference the allegations set forth in the foregoing paragraphs of this Complaint as if they were set forth fully herein.

95.    Defendants engaged in the design, manufacturing, marketing, and sales of PFAS chemicals and products containing PFAS, which Defendants knew or should have known, would result in contamination of the environment, including the surface waters and groundwater that serve as the water source for Plaintiff's public water supply systems, thereby causing damage to Plaintiff.

96.    Defendants knew or should have known of the adverse impacts the exposure to its PFAS compounds would have on the environment and the activities and rights of others.

Case# 2020-03171-2 Received at Cumberland County Prothonotary on 10/21/2020 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2020-03171-2 Received at Cumberland County Prothonotary on 10/21/2020 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

97.    Defendants knew or should have known of the persistence and high mobility of PFAS in the environment, and the foreseeable risk that their PFAS and PFAS-containing products would be discharged, released, or disposed of in the environment.

98.    Defendants failed to provide warnings or instructions sufficient to notify the users of the dangers inherent in their products.

99.    Defendants' failure to provide notice or instruction regarding the dangers to human health and the environment rendered Defendants' PFAS and PFAS-containing products unreasonably dangerous for the purposes intended and promoted by Defendants.

100.    This failure to warn or adequately instruct regarding the dangers associated with use of these products directly and proximately caused harm to Plaintiff.

## COUNT THREE – STRICT LIABILITY (DESIGN DEFECT)

101.    Plaintiff PAWC hereby incorporates by reference the allegations set forth in the foregoing paragraphs of this Complaint as if they were set forth fully herein.

102.    Defendants herein, at all times relevant, were in the business of the design, manufacture, sale and distribution of PFAS and PFAS-containing products.

103.    Defendants designed, manufactured, marketed, and sold defective products that were unreasonably dangerous for their intended use.

104.    When Defendants placed PFAS and their PFAS-containing products into the stream of commerce, the products were defective, unreasonably dangerous, and not fit, suitable or safe for the intended, foreseeable and ordinary uses.

105.    The products designed, manufactured, sold and distributed by Defendants reached consumers and users without substantial change to the condition and nature of the products.

Case# 2020-03171-2 Received at Cumberland County Prothonotary on 10/21/2020 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

106.    Defendants, with knowledge of the risks associated with the use of PFAS compounds, failed to use reasonable care in the design of PFASs.

107.    The defects in Defendants' products existed at the time the product left Defendants' control and were known to Defendants.

108.    Reasonable safer alternatives exist and were available to Defendants at all relevant times.

109.    The defects in Defendants' products proximately caused and have directly resulted in the damages of which Plaintiff complains.

## COUNT FOUR – NEGLIGENCE

110.    Plaintiff PAWC hereby incorporates by reference the allegations set forth in the foregoing paragraphs of this Complaint as if they were set forth fully herein.

111.    Defendants had a duty to exercise due or reasonable care in the manufacture, distribution, and use of its PFAS chemicals and PFAS-containing products so as to avoid harm to those who would be foreseeably injured by PFAS environmental contamination.

112.    Defendants knew or should have known that their PFAS products would result in the release, discharge, or disposal of PFAS compounds into the environment that would lead to contamination of drinking water supplies and hazards to human health if not treated.

113.    By failing to exercise due care in the design, manufacturing, marketing, and sale of PFAS and their PFAS-containing products, Defendants breached their duty to avoid harm to Plaintiff.

114.    As a result of Defendants' negligence, Plaintiff has incurred, and will continue to incur, investigation, cleanup, remediation, and removal costs and damages related to PFAS contamination.

Case# 2020-03171-2 Received at Cumberland County Prothonotary on 10/21/2020 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

115.     Defendants' acts were willful, wanton or reckless and conducted with a reckless indifference to the rights of Plaintiff.

116.     As a direct and proximate result of Defendants' actions and omissions, Plaintiff has suffered and continues to suffer damages.

### COUNT FIVE – PRIVATE NUISANCE

117.     Plaintiff hereby incorporates by reference the allegations set forth in the foregoing paragraphs of this Complaint as if they were set forth fully herein.

118.     Through Defendants' acts and omissions, Defendants' PFAS and PFAS-containing products have directly and proximately caused environmental contamination that has unreasonably interfered with, and continues to interfere with, Plaintiff's use and enjoyment of its public water supply systems and the surface and groundwater sources that supply those systems.

119.     The private nuisance created by Defendants is continuing.

120.     Defendants have failed, and continue to fail, to abate the private nuisance.

121.     As a result of the private nuisance, Plaintiff has suffered and continues to suffer, significant harm and damages, including investigation, cleanup, remediation, and removal costs and damages related to the detection, treatment and removal of PFAS constituents that have and will continue to migrate into Plaintiff's wells and surface water sources.

### COUNT SIX – PUBLIC NUISANCE

122.     Plaintiff hereby incorporates by reference the allegations set forth in the foregoing paragraphs of this Complaint as if they were set forth fully herein.

123.     Through Defendants' acts and omissions, Defendants' PFAS and PFAS-containing products have directly and proximately caused environmental contamination that has unreasonably

interfered with, and continues to interfere with, Plaintiff's right to a clean environment, which right Plaintiff holds in common with members of the public, and which right is specifically permitted.

124.    Through Defendants' acts and omissions, Defendants' PFAS and PFAS-containing products have directly and proximately caused environmental contamination that has unreasonably interfered with, and continues to interfere with, Plaintiff's right to the use of groundwater and surface waters as a source of potable water, which right Plaintiff holds in common with members of the public, and which right is specifically permitted.

125.    The public nuisance created by Defendants is continuing.

126.    Defendants have failed, and continue to fail, to abate the public nuisance.

127.    As a result of the public nuisance, Plaintiff has suffered and continues to suffer, significant harm and damages special to Plaintiff and different in kind from those the general public may have suffered, including investigation, cleanup, remediation, and removal costs and damages related to the detection, treatment and removal of PFAS constituents that have and will continue to migrate into Plaintiff's wells and surface water sources, such that Defendants should be required by injunction to abate the nuisances they have created.

## COUNT SEVEN – VIOLATION OF PENNSYLVANIA UNIFORM FRAUDULENT TRANSFER ACT ("PAUFTA") AGAINST THE DUPONT DEFENDANTS

128.    Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully stated herein.

24

Case# 2020-03171-2 Received at Cumberland County Prothonotary on 10/21/2020 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

129.     Plaintiff seeks all relief available under the PAUFTA for the Dupont Defendants' violations of the PAUFTA for their fraudulent conveyances as part of their various spin-off transactions.[2]

130.     Pursuant to the PAUFTA, a transfer made or obligation incurred by a debtor is fraudulent as to a creditor, including whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation intending  to hinder, delay, or defraud any creditor of the debtor. 12 Pa.C.S.A. § 5101, *et seq.*

131.     The DuPont Defendants engaged in acts in furtherance of a scheme to transfer DuPont's assets so that parties in PFAS litigation, such as Plaintiff, could not obtain funds or collect a judgment which they are or will be owed. As a result of the DuPont Defendants' acts, omissions, and other conduct described herein, Plaintiff has been damaged.

132.     At all relevant times, the DuPont Defendants have (1) acted with actual intent to hinder, delay, and defraud parties; (2) acted without receiving a reasonably equivalent value in exchange for the transfer obligation arising out of the DuPont-Chemours spinoff; and/or (3) were engaged or were about to engage in a business for which the remaining assets of Chemours  were unreasonably small in relation to the business or that the business intended to incur, or those liabilities the DuPont Defendants believed or reasonably should have believed that Chemours would incur.

133.     For decades, DuPont manufactured, marketed, distributed, and/or sold PFAS for use in AFFF and/or AFFF containing PFAS with the superior knowledge that they were toxic, mobile,  persistent,  bioaccumulative,  and  biomagnifying,  and  through  normal

---

[2] As previously defined, the "DuPont Defendants" refers to all DuPont entities named herein, including Defendant Corteva, and all Chemours entities named herein.

Case# 2020-03171-2 Received at Cumberland County Prothonotary on 10/21/2020 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

and foreseen use, would impact groundwater, Plaintiff's water supplies, and other natural resources.

134.   As a result of the transfer of assets and liabilities described herein, the DuPont Defendants have attempted to limit the availability of assets to cover judgments for all of the liability for damages and injuries from their manufacture, marketing, distribution, and/or sale of AFFF containing PFAS and/or PFAS for use in AFFF.

135.   At the time of the transfer of its performance chemical business to Chemours, DuPont had been sued, had notice of suits, and/or had knowledge of likely litigation regarding DuPont's liability from the manufacture, marketing, distribution, and/or sale of AFFF containing PFAS and/or PFAS compounds for use in AFFF.

136.   The DuPont Defendants acted without receiving consideration and/or a reasonably equivalent value in exchange for the transfer or obligation, and DuPont believed or reasonably should have believed that Chemours would incur debts beyond Chemours' ability to pay when those debts became due.

137.   The claims, judgment, and potential judgments against Chemours potentially exceed its ability to pay.

138.   Plaintiff seeks avoidance of the transfer of DuPont's liabilities for the claims brought herein and seeks to hold the DuPont Defendants liable for any damages or other remedies that may be awarded by the Court or jury arising from this Complaint. Plaintiff further seeks all other rights and remedies that may be available to it under Pennsylvania's UFTA, including prejudgment remedies as available under applicable law, as may be necessary for full compensation of damages and injuries Plaintiff has suffered as alleged herein.

Case# 2020-03171-2 Received at Cumberland County Prothonotary on 10/21/2020 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Pennsylvania American Water ("PAWC") respectfully requests that this Court:

a. Enter judgment on all or any of the foregoing Counts in favor of PAWC and finding Defendants jointly and severally liable for all costs and damages incurred by Plaintiff, including but not limited to prior, interim and future capital as well as operation and maintenance costs related to PFAS contamination; including the reasonable costs of sampling, investigations, assessment of injury, abatement of nuisance, and destruction or loss resulting from PFAS contamination;

b. Enter judgment finding Defendants jointly and severally liable for cleanup and removal costs and damages, including but not limited to prior, interim and future capital as well as operation and maintenance costs, including the reasonable costs of assessing injury, destruction or loss resulting from the discharges, and threatened discharges;

c. Enter judgment finding Defendants liable for punitive damages;

d. Enter judgment finding Defendants liable for consequential damages;

e. Enter judgment requiring, via injunction, Defendants to abate the nuisance they have created;

f. Award Plaintiff PAWC costs and reasonable attorney fees incurred in prosecuting this action, together with prejudgment interest, to the full extent permitted by law; and

g. Award PAWC such other relief as this Court and/or jury deem appropriate.

27

## **DEMAND FOR JURY TRIAL**

Demand is hereby made for a trial by jury.

October 21, 2020.

PENNSYLVANIA-AMERICAN WATER
COMPANY

By Its Attorneys

/s/ Elizabeth Rose Triscari
Pennsylvania-American Water Company
852 Wesley Drive
Mechanicsburg, PA  17055
(717) 550-1574
Elizabeth.triscari@amwater.com

*ADDITIONAL COUNSEL FOR PLAINTIFF*
*TO BE ADMITTED PRO HAC VICE:*

T. Roe Frazer II
Trey Frazer
**FRAZER PLC**
30 Burton Hills Boulevard, Suite 450
Nashville, Tennessee 37215
(615) 647-0990
roe@frazer.law
trey@frazer.law

Christiaan A. Marcum
RICHARDSON, PATRICK,
WESTBROOK, & BRICKMAN LLC
1037 Chuck Dawley Blvd., Bldg. A
Mount Pleasant, SC 29464
(843) 727-6642
cmarcum@rpwb.com

Case# 2020-03171-2 Received at Cumberland County Prothonotary on 10/21/2020 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.